All right, you may proceed. Thank you. May it please the court, my name is Molly Quinn, and I represent the appellant Lawrence Oakie. We're asking the court to reverse and remand for a new trial or a new sentencing hearing. This case involves the pervasive, unfair, and prejudicial use of acquitted conduct against Mr. Oakie at all stages of the case, at trial, in the calculation of the guideline range, and at sentencing. First, evidence of the 2015 allegations was admitted at trial, but the fact that Mr. Oakie had been acquitted of this conduct was completely excluded. The acquittal evidence was admissible impeachment evidence. It should have been admitted to help the jury weigh and evaluate LP, the Rule 414 witness's testimony, her motivations, and her biases. And second, the acquitted conduct was used to dramatically enhance Mr. Oakie's guideline range from 51 to 63 months, all the way to 87 to 108. Use of acquitted conduct in this manner violated Mr. Oakie's Fifth Amendment due process rights and his Sixth Amendment right to a trial by jury. Counsel, would you succinctly summarize what distinguishes this case from Vega? Yes, I would. I think there's three grounds on which this case is distinguishable from Vega and then Wells, the case that it relied on. First is the relevance of the evidence. Second, the acquittal evidence. Second is the type of evidence that could have been admissible. And third is the importance or the probative value. And starting with the relevance of the evidence here, this evidence, I think I was just saying, was relevant for impeachment of LP, the Rule 414 witness. And we don't have that same concern. It's not the same situation as a person who had previously testified in a prior trial in Vega and Wells. Was counsel able to impeach the alleged prior victim and the mother at trial in any way? Yes, there was certainly the opportunity to cross-examine and to ask questions about differences between her initial statement to investigators and her testimony at the present trial. But the defense was not able to ask her, now you testified at once before and you know that Mr. Oki was found not guilty or whatever language would have been appropriate for a young teenager of her age. I wasn't allowed to inquire into those things, which would go to her credibility in terms of whether she had any bias against Mr. Oki as a result of what transpired at the previous trial, any motivation to testify a certain way. Again, this is somebody who had given a couple different versions of what happened, whether she was more motivated to testify to the more egregious version in this trial based on her feelings about the prior case. So the bias argument is that in addition to this minor, I think it was a minor, accusing him of sexual misconduct that she would have been angrier because he got away with it. Is that basically the bias argument? That's right, that it would somehow affect her motivations to testify. And I guess the version of events that she testified to in the present case. And it also more generally would go to her credibility as a witness for those reasons that I already articulated. But you're not arguing, or maybe I missed this. You're not arguing that it would be admissible under Rule 414 itself. The, just to make sure I understand the evidence of the acquittal, I apologize. Yeah, the acquittal. Right, we, I think the proper way to think of this is that that the rule or the excuse me, the acquittal evidence is evidence in its own right that should have been admitted. And it could have been admitted in a couple different ways, but it's evidence in its own right that should be analyzed on its own for relevance. Is it otherwise excluded under the rules in Rule 403 balancing? I don't think that, I know that at trial, the framing of it was, well, this is a way to kind of mitigate prejudice of the admission of the Rule 414 evidence. And I think it goes to that, but it's also evidence that should have been admitted in its own right, independent of kind of like a defense on a Rule 403 analysis on the admission of a different type of evidence. Well, I understand your impeachment point with Judge Kobus, but I don't understand how this would be relevant otherwise. You say it's relevant in its own right under what rule? I would say relevant as impeachment evidence. Okay. As impeachment. I just wanted to clarify that. Okay. Thank you. I want to go back and kind of continue to distinguish this case from Vega and Wells. Again, here the evidence could have come in in several ways, none of which would have been an admissible hearsay, which was, it seemed to be the court's primary concern in Vega and then Wells that it relied on. Here, that evidence could have come in as a question to LP, the Rule 414 witness, in a way that I already described, or possibly to her mother or to another witness. Are you aware that there was a prior trial on these allegations, the Rule 414 allegations or the 2015 allegations, and you're aware that Mr. Oki was acquitted? That evidence could have come in that way. It didn't have to just be the judgment of acquittal, which appears to be at least the The district court also posited this evidence could have come in as an instruction to the jury. I think maybe that was almost like in terms of like a stipulation or just as a replacement for substantive evidence admitted through a witness that the court could just instruct the jury. There was a prior trial. Mr. Oki was found not guilty of these 2015 allegations. I understand the argument. Are you aware of this? But wouldn't that be the equivalent of the jury instructing? I mean, I know there's no rule necessarily precisely on point, but the jury, the judge instructing the jury about hearsay. In other words, this is, we recognize in Vega, this is essentially hearsay. So you'd be, you'd be, you'd have the judge essentially doing what a witness could not. Because what he's saying to the judge, for example, are you aware that he was acquitted? That's right. And I think that was one of the ways that the district court talked about that this could, this would be a way to get it in front of the jury. If we call it acquittal evidence, if that evidence would have come in. But if I agree with you that that almost makes it, it almost makes the evidence and like instructing the jury on how to use hearsay evidence, it almost combines it all into one. I think the preference would have been some sort of evidence, live evidence in trial to get this acquittal evidence before the jury. And I don't think it would have been something that the defense would have dwelled on, on and on just a question or two to a witness. Are you asking us to break new ground here? I mean, I don't recall a case in your papers that's directly on point. I mean, we have the 404B cases in Vega and Wells. You're asking us to apply it differently based on the facts of this case. Is that the way I understand it? Based on the fact that bias and impeachment should have, you should have been able to show, to impeach these witnesses and to show bias. Is that basically the argument? It is the argument. I'm not sure that I totally agree that it's breaking new ground. I read Vega and Wells as still allowing this to be a case by case consideration. I understand the language in that case is judgments of acquittal ordinarily or usually, I don't recall the exact word, are not admissible because they're an admissible hearsay and they aren't relevant to collateral estoppel and due process doctrines. But I don't read those cases as saying acquittal evidence is never admissible for any purpose. And so what I don't see in Vega and Wells is any sort of argument that this evidence, that the acquittal evidence would be relevant to the credibility of a witness who is now coming in and testifying again for a second time about an offense against her person by the defendant in this case. That then, and I think another thing that distinguishes it is rule 414 is a propensity rule. And so I think that affects the court's analysis on whether what the importance of this evidence and its probative value and also just the range of permissible purposes that because of that. Is that primarily a 403 analysis then? I think it would be a response to the indication that acquittal evidence is prejudicial to the government. The probative value of this evidence. So it's relevant. Are you arguing it's relevant beyond impeachment purposes then? Our argument, no, our argument is that it's relevant for impeachment purposes with the understanding that that includes motivation to testify a certain way, potential bias that's developed. Counsel, how does that, how would it have much probative value when you think about an acquittal? You know, an acquittal, the government didn't meet its burden in a particular case. How does that provide or have much probative value? Well, we're not, we wouldn't be offering that evidence to show that it's not, it's not, it's not like you have evidence of conclusive evidence of the lack of guilt. You, it would be evidence of a failure to convict. I agree with that in that the evidence here wouldn't be offered to show that by some standard that's binding on the jury that that prior, prior allegation, that the prior allegations didn't happen. The probative value goes to how does it affect LP, the Rule 414 witness in this trial? Her mother also testified briefly. How does it affect those witnesses? And are those people that the jury can find credible? And I wanted to briefly touch on that. That goes back to what you mentioned earlier that perhaps there was some anger that there was no conviction. That's right. But now, is there a case, but you don't have a case that, that in which that, that particular theory was endorsed? No, I don't have, I don't have an Eighth Circuit case or a federal case, but I also don't see that those permissible purposes or relevance of an acquittal evidence was brought up or considered in prior Eighth Circuit precedent. I don't think that that was an issue, for example, in Vega and Wells. And I wanted to briefly touch on the limiting instruction that the district court did given this case. That instruction was not sufficient to address this issue. Again, the fact of the acquittal was relevant to impeachment and instruction to the jury that this isn't something that Mr. Oki was necessarily convicted of, doesn't have the same effect as positive introduction of evidence of an acquittal in this case. In this error, the exclusion. I was just going to ask, I apologize, I'm going back to the previous issue, but I have one additional question. And, and that is, I don't understand the impeachment point to have been made to the district court. Um, my understanding of it was this is evidence that is substantively admissible, um, you know, on its own, sort of the, the, the, the conversation we were having earlier and not for impeaching this witness. Am I wrong about that? Can you identify something in the record where this point was made? Yes, I will. I would point you to two places. The pretrial briefing document, your district court docket 74, the defense argued, and this was in response to the government's motion eliminated to exclude acquittal evidence that the acquittal evidence was highly relevant to LP's credibility. And when used for that purpose would not constitute hearsay. And the defense made that, that same point again at the pretrial conference, which was actually the first morning of trial before jury selection. That would be on page 18 of the trial transcript. A defense counsel argued that in short, that to allow the jury to know that there was an acquittal helps them determine her LP's credibility. So I think by arguing that this was relevant to her credibility and saying, it's not, it wouldn't be impeachment for the, or excuse me, it wouldn't be hearsay for that purpose. I think that fairly encompasses the impeachment argument that we're using as an umbrella term here. Got it. Thank you. I just want to briefly address that the exclusion of the acquittal evidence was not harmless error. LP's testimony was important. Identity, the identity of the perpetrator in the present case was a key issue here. The government, the prosecution invited the jury to use LP's testimony, the rule 414 evidence to determine identity in this case. That was an explicit invitation to the jury and the jury in a question during deliberations, we know was concerned about identity because they asked if BJW, the alleged victim here, or BW, her older sister positively identified Mr. Oki. So for those reasons, we know the tying of the rule 414 evidence to the identity of the that makes the exclusion of any evidence that would have gone to impeachment of the, of the rule 14 witness, not worse. I do want to briefly address the sentencing issue specifically. Your counsel, you're welcome to proceed, but pay attention to your time. If you plan to have anything on rebuttal. Thank you. I'll be brief. And the 96 months, 96 months sentence in this case was substantively unreasonable. It also gave too much weight to conduct for which Mr. Oki was acquitted. It dramatically increased his guideline range. And this is conduct that we know that Mr. Oki actually spent over a year in custody for that he didn't get credit for. And then he again is punished by months or even years, several months, several years, in addition to what he would have been punished for in this case. And I would at this point reserve the remainder of my time. Thank you. All right. Okay. Mr. Miller. Thank you, your honor. If it may please the court and my colleague, Ms. Quinn, I'm Jay Miller from the United States attorney's office in the district of South Dakota. And I represent the United States on this appeal. The government is asking the, both the conviction and the sentence be affirmed. Lawrence Oki was charged on two separate occasions with sexually molesting two different teenage 10-year-old girls, both of whom had not met him or known him prior to the night the molestations took place, while he was a guest in the home that the two girls lived in. And at a time that the two respective girls' tribal fair was taking place. When you compare the facts of the two different cases,  In the one instance, Oki was acquitted of the sexual molestation. And then the other, he was convicted, which is what brings about this appeal. The central questions before this court on the appeals dealing with the acquittal have been resolved by this court and other circuit all in unison. Therefore, two of the three arguments raised on appeal by Mr. Oki were foreclosed by specifically Eighth Circuit precedent and on the sentencing issue, as well as other circuits. Turning first to the first argument raised by Mr. Oki, that the exclusion of the evidence of the acquittal on the 2015 allegation. For the court to adopt Mr. Oki's argument that the district court should have allowed him to present the evidence of his prior acquittal would require abandoning circuit precedent. This court has specifically held that the district court's failure to instruct jury regarding prior acquittals was not an abuse of discretion. And that's the Wells case. And the Wells case was then reaffirmed in the case of the United States versus Vega. Mr. Miller, did those cases, I don't recall, did those cases involve an argument that it was impeachment evidence and not hearsay? Uh, it was an argument. They just said that it should have been admissible in that it was relevant. When I read those two opinions, I did not get a articulation of how the defense intended on introducing that and how the evidence of the prior, the prior acquitted conduct, they even was introduced before the jury. They were just saying that it was relevant and something that should have been admitted to the Now, one of the things that Oki's on appeal attempted to do in addressing Judge Cobus's question is, is distinguishing Wells and Vega to argue that the acquittal should have been admissible in this particular case, where maybe it isn't in others. They raised three different points to argue that the cases are distinguishable. And one is, is that the relevance in particular to the comparison between 404B type evidence, which is the type of evidence that was admitted in Vega and Wells versus the 414 evidence in this case, it is the government's position that those are a distinction without a difference. Both rules of evidence, both rule 404B and rule 414 deal with admissibility of other and typically prior acts, crimes or wrong. The relevance that you look at those prior acts, whether it be 404B or 414 evidence of a prior act at a subsequent trial is the same, regardless of the nature of the offense, the defendant was previously acquitted of. So therefore it's irrelevant whether the prior conduct was prior drug dealing as it was in Wells and Vega, or as it was of a prior sexual mastation as it is in this case. The distinction between the 404B and the 414 evidence as it relates to relevance is a distinction without a difference. The second point that Oki raises is the acquittal evidence should have been admitted to help judge the credibility of LP and specifically her mother. LP was a witness called by the government in this case. If my recollection is correct, her mother was actually called by the defense, Mr. Oki, in this case. When you review the cases cited in the government's brief, judgments of acquittal are not generally relevant because they don't prove innocence. They simply show that the government did not meet its burden of proving guilt beyond a reasonable doubt. And that is the curly case from the Fifth Circuit cited by the government in its brief. So the fact that there was an acquittal would not be a question that was relevant to judge the credibility of LP. Wait a second. So wait, I want to follow up on that, which is, you know, if there was some anger about a prior acquittal, why isn't that relevant to show bias or a lack of credibility of a current witness? I mean, it just seems to me like that's common sense. So, I mean, leave all the other arguments aside. Why isn't this impeachment evidence? I'll address the impeachment evidence in two parts. One, the bias that you just talked about, Judge Strauss, and then separately, a more general impeachment type evidence. The bias is regarding the victim being angry at the fact that she was molested by Mr. Oki and wanting justice, wanting him held accountable. That same feeling, that same sentiment by LP could have been argued existed the first time she testified in relation to the 2015 allegation at the trial in June of 2017. Her motivation of being angry at the defendant for what happened and wanting him held accountable is no different in the first trial from the second trial. So that is not a proper bias to impeach her on. Secondly, there are other aspects regarding her credibility that the acquittal wouldn't address, and specifically the defense was allowed on cross-examination of LP to get into her credibility, to get into the differences between what she told law enforcement initially and what she testified to at the trial of Mr. Oki in 2018 regarding the second case. All those impeachment type arguments were made for Mr. Oki to get into that. Isn't that latter point a question of prejudice or harmless error than the admissibility of the evidence? Harmless error is one of the arguments that I do make. I haven't gotten to that point yet, but your honor, that is correct. Now, one of the other reasons that the admission of the acquittal isn't admissible to impeach her is because the original trial in 2017 where LP was the named victim, the burden of proof was beyond a reasonable doubt. That's the jury the finding had to make in order to convict Mr. Oki. At the second trial in 2018 in which BJW was the named victim, the jury only had to consider LP's testimony by preponderance of the evidence. And because of that distinction in the weight of the evidence, the acquittal is not proper impeachment to ask LP or admit the acquittal evidence on. It would also serve to confuse the jury when they're saying that the burden of proof is beyond a reasonable doubt except in this instance it's by preponderance of the evidence. But the third prong that Oki uses to try to distinguish Vega and Wells from this particular case is the identification issue by BW and BJW. And in this case the government acknowledges that neither girl pointed out Mr. Oki in the courtroom and said that's the man that did this. However, they did introduce testimony that the man that did this was a bigger man. It was a bald man. It was a man that had tattoos on his neck and tattoos on his arm that consisted of words. They also indicated that this man was introduced to them earlier in the evening as LBJ. And through other testimony introduced at trial, everybody acknowledged that LBJ was Oki. Those were his initials. And pretty much that's what everybody referred to him as. They didn't call him Lawrence. They didn't call him Oki. Pretty much everybody that knew him referred to him as LBJ and that was not disputed at trial. There was another aspect that tied Mr. Oki to the identification and that is the testimony regarding the fact that he had taken the girl's mother to a separate location in a vehicle that had been borrowed and then returned to the residence. In the morning, that vehicle was needed to go pick up the mother from the place she had been taken to. And the witness that testified regarding finding the keys to that vehicle testified that those keys were found in the girl's bedroom, which is consistent with the testimony of the mother that the keys were taken so that the mother could be transported to a different location. And then also with what the girls testified to that the molestation took place in that bedroom. So even though the girls did not physically point to him in the courtroom and identify him as the perpetrator, there was more than enough evidence to identify him as the perpetrator. In addition, the identity testimony is completely separate and distinguishable from the testimony of LP and regarding her impeachment. Those are apples and oranges. It's not comparing apples to apples. One of the things I would like to address is I've argued that there is clearly case precedent in Vega and Wells that says this comes in. But there are policy considerations that we have to ask. When I'm preparing for this, I'm asking myself, what are the judges potentially going to ask me during this argument? And one of the things, just a basic line is, is this fair? Why is this allowed? And I addressed some of that already in terms of a judgment of acquittal is not relevant because it doesn't prove innocence. The jury in the prior case had to find LP's testimony credible beyond a reasonable doubt where the standard in this case of preponderance of the evidence. Importantly, in this case, as was consistent with the Dowling case cited by the defense in their brief, the jury was instructed not once but twice in terms of evidence. One during the final jury instructions. Now, in oral argument, Mr. Oki argued that the limiting instructions were not proper. However, they were correct statements of the law and they weren't challenged by Oki on appeal. That issue was not raised in their appeal, was not raised in their brief. What the court found particularly mitigating is that both instructions told the jury in part, you may hear when this instruction was first given and you have heard during the final argument is that the defendant allegedly committed another alleged act of child molestation for which he was not convicted. The district court all but told the argument or said in his closing argument to the jury that LP twice promised, twice promised to tell the truth, but told two different stories. Well, the jury in this particular case only saw her promise once to tell the truth. The other time was when she testified in 2017. The question is, why and how is the instruction that Oki suggests the district court should have given regarding the acquittal be so much better or such a game changer from the instruction the court actually gave in this case? Although the district court did not directly advise the jury that Oki was acquitted, the distinction between what the district court did give and what Oki is contending does not I do want to address briefly the sentencing argument. And in this case, the applicable precedent forecloses Oki's argument that his constitutional rights were violated. And Oki all but concedes that and says he's preserving this for further review. One of the things that Oki does indicate in his reply brief is that in no case was the 5th and 6th argue actually discussed. And the government respectfully disagrees with that. In Papke, the co-defendant, Black Cloud, specifically contended that the district court's consideration of acquitted conduct to enhance her sentence violated her rights under both the 5th and 6th amendment. And that this court in that case specifically rejected that. And not only has the 8th Circuit in the Papke case did this, but there is five other cases cited by the government of other 8th Circuit cases doing the same thing. The United States Supreme Court in the Watts case held the same thing and also ruled that every circuit has ruled likewise. Your Honor, based on all the foregoing, it is the government's position that the acquitted conduct was properly excluded during the doing of the jury trial, the holding of the jury trial, but was also properly used to enhance the defendant's sentence as a part of the repeat and sex offender case. If there are no further questions, I see I'm out of time and I would like to thank the court for its consideration today. All right, thank you, Mr. Miller. Ms. Quinn for rebuttal. Thank you. Excuse me. I want to start by briefly clarifying a couple points. Our argument on the acquittal evidence being admissible to show bias is that LP would have developed an anger or a resentment because of the acquittal in the prior case, not because of the alleged incident. So I just wanted to make that clear. I also want to clarify our argument regarding the limiting instruction. Our argument isn't that the limiting instruction on its own was improper. Our argument is that it wasn't a replacement for evidence that Mr. Oki had been acquitted of the prior allegations. Well, let me ask you a question on that count, which is, you know, on a harmless error analysis, assuming you're right that it's admissible for impeachment, you have evidence that he wasn't to do some impeachment. Why would this have been, why would this have affected the outcome of the trial? I think I would go back to the identity issue and the, and I'm running really short on time, but the specific attempt to tie the rule 414 evidence to the identity of the perpetrator through the government's closing argument and that this would have gone to LP's credibility. I see that I'm out of time. Judge Frost, was that? It is. I think that was one of the key questions of the case, but that helped. Thank you. Okay. Counsel, thank you very much for your appearance today and your arguments. The case is well argued and it is submitted or will render a decision in due course.